IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH McKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-cv-2054 |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | Jeffrey T. Gilbert |
| ACTING COMMISSIONER OF | ) | Magistrate Judge |
| SOCIAL SECURITY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is an appeal of the denial of a claim for disability insurance benefits pursuant to 42 U.S.C. § 405(g). Plaintiff Keith McKinney ("Claimant") seeks review of the final decision of the Commissioner of Social Security Administration ("Commissioner"), denying his application for Social Security Disability Insurance and Supplemental Security Income under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment.

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons stated herein, Claimant's motion [DE # 15] is granted, and the Commissioner's motion [DE#19] is denied. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin automatically is substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Claimant filed an application for disability benefits on September 16, 2009, alleging a disability beginning on October 1, 2009.[2] (R. 216). Claimant filed for disability benefits claiming the following severe impairments: HIV, asymptomatic; syphilis; neuropathy; lymphoma; and depressive disorder. (R. 238). His application was denied initially on January 20, 2010 (R. 158-162) and again after reconsideration on July 28, 2010 (R. 163-170). Claimant requested a hearing before an ALJ on August 25, 2010. (R. 171-73). Claimant appeared and testified at a hearing on March 7, 2011 and he was represented by an attorney. (R. 39, 182). Two medical experts ("ME") testified at the hearing. (R. 40). A vocational expert ("VE") also testified at the hearing. *Id.*

On December 9, 2011, the Administrative Law Judge ("ALJ") denied Claimant's application for Supplemental Security Income and Social Security Disability Insurance benefits and found him not disabled under the Social Security Act. (R. 16-32). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since October 1, 2009, the amended alleged onset date. (R. 21). At step two, the ALJ found that the Claimant had the following severe impairments: HIV positive asymptomatic; peripheral neuropathy; history of deep venous thrombosis, right lower leg; and major depressive disorder. (R. 21-22). At step three, the ALJ found that none of Claimant's impairments, alone or in combination, met or medically equaled one of the listed impairments described by Appendix 1 of the regulations. (R. 22-27).

At step four, the ALJ found that Claimant had the residual functional capacity to perform light work as defined by 20 C.F.R § 404.1567(b) and 416.967(b) and could lift or carry 20

---

[2] Claimant originally stated an alleged onset date of August 15, 2008. (R. 216). However, the Court understands that date was subsequently amended at the hearing to October 1, 2009. (R. 19).

2

pounds occasionally and 10 pounds frequently. (R. 27). Claimant is able to stand or walk for six hours in an eight hour workday. *Id.* He can sit six hours in an eight hour workday. *Id.* Claimant can push or pull 20 pounds occasionally and 10 pounds frequently. *Id.* The ALJ also found that the Claimant had the following environmental limitation: avoid all exposure to hazards such as moving machinery, knives, saws, and anything with the risk of lacerations. *Id.* Claimant also had the following non-exertional limitations: his work is limited to simple, routine, repetitive tasks, performed in a work environment free of fast-paced productivity requirements, involving only a few work-related decisions, and with few, if any, work place changes. *Id.* At step five, the ALJ concluded that Claimant was unable to perform his past relevant work as a health care activities aide. (R. 31). Accordingly, the ALJ concluded that Claimant was not disabled under the Social Security Act. (R. 32).

Claimant appealed the ALJ's decision to the Appeals Council on December 9, 2011. (R. 1). The Appeals Council denied his request for review on February 20, 2013. *Id.* Therefore, the ALJ's decision was the final decision of the Commissioner and is reviewable by the district court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ANALYSIS

We will reverse the Commissioner's findings only if they are not supported by substantial evidence or if the Commissioner applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). However, we do not displace the ALJ's judgment by reconsidering facts or evidence or making independent credibility determinations. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

3

Claimant argues that this matter should be reversed and remanded because the ALJ (1) failed to properly weigh the medical opinion evidence and (2) failed to properly evaluate Claimant's credibility. After reviewing the parties' briefs and the administrative record, the Court concludes that more explanation is needed from the ALJ about both the weight she assigned to the medical opinions as well as her credibility analysis. Therefore, remand is appropriate.

## A. THE ALJ'S FINDING ON CLAIMANT'S MENTAL IMPAIRMENTS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Claimant argues that the ALJ failed to appropriately weigh the medical opinion evidence. Specifically, the Claimant contends that the ALJ rejected the medical opinion evidence offered by the Claimant's treating psychiatrist without pointing to any other evidence that supported her finding that Claimant's depression did not cause significant functional limitations that precluded work. For the reasons discussed below, this Court agrees.

At issue in this case is the "treating physician" rule. Under the "treating physician rule," an ALJ must give controlling weight to a treating physician's opinion if the opinion is both (1) "well-supported by medically acceptable clinical or laboratory diagnostic techniques;" and (2) "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 416.927(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ also must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739.

In this case, there were two sources of medical opinion evidence concerning Claimant's mental impairments: his treating psychiatrist, Dr. Vargara-Rodriguez, and Dr. Cremerius, the consulting psychologist. Dr. Vargara-Rodriguez diagnosed the Claimant with severe major depression as well as social anxiety, stating that he is "unable to function in a work setting." (R.

4

417). Dr. Cremerius agreed with Dr. Vargara-Rodriguez's conclusion based on his evaluation of her progress notes and her responses in the Mental Residual Functional Capacity Assessment, Mental Assessment of Ability to Do Work-Related Activities and Psychiatric Impairment Questionnaire. *Id.*

After reviewing the record, the ALJ concluded that the Claimant's mental impairments do not rise to the level of a disability. In reaching her decision, the ALJ did not place "controlling or even significant weight" on the medical opinion of the treating physician, Dr. Vargara-Rodriguez, stating that the doctor's treatment notes were "wholly inconsistent." (R. 30). In rejecting the treating physician's opinion, the ALJ correctly restated the "treating physician" rule when she reasoned that sources other than the treating physician may be relied upon when there are conflicts or inconsistencies in the record. (R. 30). However, the ALJ failed to explain what other medical evidence in the record she relied upon in reaching her decision. Instead, the ALJ reviewed the medical evidence provided by the Claimant's physician, Dr. Vargara-Rodriguez, and came to her own conclusion about what that evidence showed.

Case law emphasizes that an ALJ must not substitute her own judgment for a physician's opinion without relying on *other* medical evidence or authority in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (emphasis added). *See also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") Here, the ALJ concluded that the Claimant's mental impairments were not disabling and supported that conclusion with certain progress notes authored by the Claimant's treating physician, whose opinion the ALJ previously rejected. Specifically, the ALJ points to certain of Dr. Vargara-Rodriguez's progress notes that contain a number of positive impressions. These progress notes contain comments from the Claimant or

5

remarks by Dr. Vargara-Rodriguez that the Claimant's mood "is much improved" or "less depressed." The ALJ relies on these remarks in determining that the Claimant's mental impairments do not rise to the level of disability.

However, a patient who suffers from a chronic condition and who undergoes years of treatment is bound to have good days and bad days. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("Suppose that half the time [he] is well enough that [he] could work, and half the time [he] is not. Then [he] could not hold down a full-time job.") It is likely that this would be the case for a person who suffers from depression, as the Claimant does here. However, the ALJ appears to have overlooked this possibility. Instead, she cast aside the opinion of Dr. Vargara-Rodriguez and drew her own independent medical conclusions based on the Claimant's "good days." In so doing, the ALJ substituted her judgment for that of Dr. Vargara-Rodriguez.

The ALJ not only cast aside the treating physician's opinion but also the opinion of Dr. Cremerius, the state agency consulting physician, who agreed with Dr. Vargara-Rodriguez. The ALJ thus rejected all of the medical opinion evidence on the issue of Claimant's mental impairments, reviewed the medical records herself and came to a different conclusion than the medical professionals. By relying only on select progress notes from Dr. Vargara-Rodriguez to support her conclusion that Claimant's mental impairments do not impede his ability to work, the ALJ impermissibly played doctor and therefore, her conclusion is not supported by substantial evidence. Remand to the Social Security Administration is required under these circumstances.

The Commissioner argues that the ALJ rejected the opinions of Dr. Cremerius and Dr. Vargara-Rodriguez because they usurped the role of the Commissioner by opining on the ultimate issue of disability. It is unnecessary to address this argument. Even if we assume that the Commissioner is correct – though it is unclear from the ALJ's opinion if this is in fact her

reasoning – the ALJ still cannot make independent medical findings on her own. Our case law holds that an ALJ in a Social Security hearing has a general duty to develop a full and fair record. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). When the evidence is inadequate to determine whether the claimant is disabled, an ALJ must re-contact medical sources or obtain an independent medical expert opinion. *See* 20 C.F.R. § 404.1512(e); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Therefore, even if the Commissioner is correct that the ALJ was justified in rejecting the medical opinions, the ALJ still erred when she failed to obtain an independent medical opinion and instead, made her own medical findings.

## II. THE ALJ'S CREDIBILITY DETERMINATION WAS PATENTLY WRONG

Claimant also alleges that the ALJ failed to make a lawful credibility determination. Specifically, the Claimant argues that the reasons offered for the ALJ's credibility determination were not grounded in the evidence. For the reasons discussed below, this Court agrees and remands for further analysis.

In making a credibility determination, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. SSR 96-7P, 1996 WL 374186, at *2. Second, the ALJ must consider the "intensity, persistence, and functionally limiting effects of the symptoms" to determine the extent to which the symptoms "limit the individual's ability to do basic work activities." *Id. See also Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004). If a claimant's statements are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, at *2. Because the ALJ is in the best position to determine the credibility of witnesses, a Court will review the finding "deferentially" and will overturn a

credibility determination "only if it is patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). The ALJ must give specific reasons if she determines the claimant's testimony is less than credible. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005).

In this case, the ALJ provided three reasons for finding the Claimant incredible. First, the ALJ discusses the Claimant's "alleged history of a learning disability," and how it did not impact his ability to earn wages from 1995 to 2008. (R. 28). However, Claimant does not allege a learning disability as an impairment entitling him to disability benefits. Additionally, discussion of the Claimant's ability to earn wages at a time prior to the alleged onset date is irrelevant. Therefore, this reason for finding the Claimant incredible was in error.

Second, the ALJ found the Claimant's testimony that neuropathy in his leg prevents him from working incredible because "an ultrasound venous Doppler of the right lower extremity … revealed no evidence of an acute DVT of the right lower extremity." (R. 28-29). Here, the Claimant did allege that his neuropathy was a condition that impacted his ability to earn wages and contributed to his eligibility for disability benefits. However, neuropathy and a deep vein thrombosis ("DVT") are separate conditions.[3] Further, there is no indication that the two conditions are linked in this case.[4] Therefore, it is unclear why the ALJ determined that the Claimant's testimony regarding his neuropathy was incredible due to an absence of evidence of a DVT. This finding also was erroneous.

---

[3] A deep vein thrombosis, or DVT, is a blood clot that forms in a vein deep in the body. *What is Deep Vein Thrombosis,* National Heart, Lung, and Blood Institute, http://www.nhlbi.nih.gov/health/health-topics/topics/dvt/. Peripheral neuropathy develops as a result of damage to the peripheral nervous system and can cause numbness, tingling or muscle weakness. *Peripheral Neuropathy Fact Sheet*, National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/peripheralneuropathy/detail_peripheralneuropathy.htm

[4] The ALJ notes in her decision that the consulting physician, Dr. Slodki, to whom she afforded great weight, noted there are two possible causes of Claimant's peripheral neuropathy: HIV complications, or post-operative complications of the claimant's hernia repair and lipoma resection infection…" (R. 22). The ALJ also notes that Dr. Simon, to whom the ALJ accords controlling weight, also found that the Claimant's neuropathy was probably caused by his HIV infection. (R. 29)

Third, the ALJ pointed to the selected progress notes of Dr. Vargara-Rodriguez as evidence that the Claimant's depression was not disabling and therefore, his testimony about his depression was incredible. As discussed above, the ALJ's focus on select treatment notes in the record that support her conclusion was in error. Therefore, finding the Claimant not credible based on this determination also was erroneous.

Our cases previously have that an ALJ's credibility determination will be found "patently wrong" only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-414 (7th Cir. 2008). Because each of the reasons expressed by the ALJ for her credibility determination were not founded in the evidence, the ALJ's credibility determination in this case is patently wrong. Accordingly, the issue of the Claimant's credibility also is remanded for further analysis.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Claimant was disabled between October 1, 2009 and March 7, 2011, or that he should be awarded benefits for the period in question. To the contrary, the Court has not formed any opinion in that regard and leaves those issues to be determined by the Commissioner after further proceedings consistent with this Memorandum Opinion and Order.

### III. CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment [DE#15] is granted, and the Commissioner's motion for summary judgment [DE#19] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  December 22, 2014